IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| KELLY ALLEN FRANK,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY PASHA, JIM WILLIS, and GAYLE LAMBERT,<br><br>Defendants. | Cause No. CV 08-77-H-DWM-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pending is Defendants' Motion to Dismiss based upon Plaintiff Kelly Frank's failure to exhaust administrative remedies (Court Doc. 28). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons set forth below, the Defendants' Motion to Dismiss should be granted.

## I.  MOTION TO DISMISS STANDARD

Defendants filed their Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for Mr. Frank's failure to exhaust his administrative remedies.  A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b).  *See* Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20.  Where the court looks beyond the pleadings to a factual record in deciding the motion to dismiss, which is "a procedure closely analogous to summary judgment," the court must assure that the plaintiff has fair notice of his opportunity to develop a record.  Wyatt, 315 F.3d at 1120 n. 14 (referencing the notice requirements outlined in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  Defendants served a *Rand* Notice upon Mr. Frank with the filing of their Motion to Dismiss.  (Court Doc. 30).

Defendants bear the burden of establishing that the plaintiff failed to exhaust administrative remedies prior to filing suit. *See Wyatt, 315 F.3d at 1120*. If the court concludes that administrative remedies have not been exhausted, the unexhausted claims should be dismissed without prejudice. *Wyatt,* 315 F.3d at 1120; *see also Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

## II.  FACTUAL BACKGROUND

Mr. Frank is an inmate at Montana State Prison. He entered the prison in September 2005. (Court Doc. 11–Second Amended Complaint, p. 2). From June 2006 until June 2007, Mr. Frank had an inmate job assignment on the ranch operated by Montana Correctional Enterprises (MCE). (Court Doc. 11–Second Amended Complaint, p. 3; Court Doc. 29-1: Lambert Affidavit, ¶¶ 4-5). Mr. Frank took advantage of that job on June 8, 2007 when he escaped from prison in his work truck. (Court Doc. 11–Second Amended Complaint, p. 3; Court Doc. 29-1: Lambert Affidavit, ¶ 5). On June 8, 2007, while working at a remote location on the MCE ranch, Mr. Frank and another inmate escaped from the prison by driving an MCE spray truck to the Racetrack Campground,

approximately ten miles away. Mr. Frank and the other inmate then fled on foot to Anaconda where they burglarized a home, taking a vehicle and a firearm. Five days later, on June 13, 2007, Mr. Frank and the other inmate were apprehended in the Seeley Lake area. (Court Doc. 29-1: Lambert Affidavit, ¶ 5).

Defendants contend the first record of Mr. Frank filing any grievance while at MSP was on June 21 and 22, 2007, after he was apprehended from his escape. On June 21, 2007, Mr. Frank filed an informal grievance in which he alleged he had "physical effects from spraying poisons for MSP state farm from aprox August, Sept of 06 to 6/14/2007 by being in direct contact with a fine mist of posion [sic] chemicals with out proper protective gear that was requested in writing." (Court Doc. 29-3: June 21, 2007 informal grievance). The action requested was compensation and complete medical treatment. (Court Doc. 29-3: June 21, 2007 informal grievance).

On July 5, 2007, Gayle Lambert, administrator of Montana Correctional Enterprises, denied this grievance stating,

> Mr. Frank, I have reviewed all of the logs & chemical labels,

>and spoke to your Supervisor Mr. Willis.  You had in your possession when spraying a key to the chemical cabinet, which also held protective gear such as gloves, coveralls and respirator masks.  You had access to these every time you sprayed.  Per the label this protective gear was sufficient for "handlers and applicators" using these chemicals.  You had MSDS training and were given instruction on proper application.  I believe you proved you were in excellent health when you escaped from this facility on June 8, 2007.  If you need medical treatment for an issue that arose during your escape, please contact the infirmary, but please do not try to pass anything off on the weed spraying, as you would not have been able to walk the great distance you had if you had problems.

(Court Doc. 29-3).

On June 22, 2007, Mr. Frank filed another informal grievance alleging "[i]n a period of 12 to 13 months I was expos [sic] to carbon minoxid [sic] while driveing [sic] black hay truck 'Plate 421'."  (Court Doc. 29-6:  June 22, 2007 informal grievance).  Gayle Lambert also denied this grievance stating,

>You told Supervisor Willis about heat coming in cab, per him, he gave you permission to put heat shield up.  Supervisor Pasha also requested to have MVM repair exhaust leak in truck  I can find no records of excessive amounts of aspirin requested by you due to headaches.  Again, I believe your headaches could not have been too bad, as you were able to walk great distances when you escaped from your work assignment June 8, 2007 – and were

> apprehended after walking great distances with little clothing and no footwear.  If you have medical issues that you need addressed that arose from your escape and time spent in the elements, please contact the infirmary.

(Court Doc. 29-6).

On July 10, 2007, Mr. Frank filed formal grievances relating to both the spraying allegation and the carbon monoxide allegation and in both grievances, he requested medical treatment and compensation. (Court Doc. 29-2:  Reich Affidavit, ¶¶ 8, 12; Court Docs. 29-4, 29-7).

Because Mr. Frank asked for medical treatment in both grievances, Grievance Classification Officer Billie Reich classified them as medical grievances and forwarded them to the MSP infirmary. (Court Doc. 29-2:  Reich Affidavit, ¶¶ 9, 12).  Registered Nurse Aaron Frederick responded to both of Mr. Frank's grievances and denied them.  (Court Doc. 29-2:  Reich Affidavit, ¶¶ 9, 13; Court Docs. 29-4, 29-7).  In response to the grievance regarding protective clothing Nurse Frederick stated,

> Ms. Lambert is correct in her response.  You were responsible for your own actions & choice of protective gear when working.  Prior to your apprehension after escaping, you had complaints of back pain.  You are scheduled to see a

provider this week to discuss issues of concern.  No apparent needed compensation for work you agreed to.

(Court Doc. 29-4).

Nurse Frederick responded to the grievance regarding carbon monoxide as follows:

> You had no kites or medical complaints regarding this issue in your chart prior to your escape & apprehension.  You are scheduled to see Dr. Kohut this week to discuss issues.  We will provide any medical treatment appropriate to medical problems but no compensation is necessary.

(Court Doc. 29-7).

On July 18, Mr. Frank appealed the denial of his grievances to the director of the Montana Department of Corrections.  (Court Doc. 29-2: Reich Affidavit, ¶¶ 10, 14; Court Docs. 29-5, 29-8).  On August 2, 2007, Director Mike Ferriter responded to Mr. Frank's appeals and denied them both.  (Court Doc. 29-2:  Reich Affidavit, ¶ 15; Court Doc. 29-9).  Director Ferriter stated:

> There is no medical evidence verifying that you are suffering any physical effects because of the weed spray or what you believe to be carbon monoxide.  Please submit a medical offender staff request form to the infirmary if you believe that you are experiencing physical effects resulting from these issues.  I am denying your appeal.

FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE
JUDGE - CV-08-00077-H-DWM-RKS / PAGE 7

(Court Doc. 29-9).

## III. ANALYSIS

Defendants move to dismiss Mr. Frank's claims arguing Mr. Frank failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA's exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also* *Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). This exhaustion requirement is mandatory. *Booth*, 532 U.S. at 741.

The PLRA is applicable in this case and therefore Mr. Frank must have exhausted all available administrative remedies prior to filing this lawsuit.

At all times applicable to Mr. Frank's allegations, the Montana State Prison followed the administrative grievance procedure set forth

in Montana Department of Corrections Policy No. 3.3.3. (Court Doc. 29-2: Reich Affidavit, p. 4, ¶ 18; Court Doc. 29-11: MSP Policy 3.3.3). Upon arrival at MSP, all inmates are given an orientation which includes the grievance procedure and the correct way to file grievances. (Court Doc. 29-2: Reich Affidavit, p. 5, ¶ 19). The procedure provides inmates with four levels at which they may resolve a complaint. Step one requires inmates to submit an informal resolution form within five working days of the event at issue. (Court Doc. 29-11: MSP Policy 3.3.3, Section III(E)). (It is established that this period expired while Mr. Frank voluntarily absented himself.) If the inmate is not satisfied with the response to the informal grievance and wishes to exhaust administrative remedies, the inmate must file a formal grievance, which is responded to by the prison grievance coordinator. (Court Doc. 29-11: MSP Policy 3.3.3, ¶ III(E)(4) & (F)). The grievance procedure then provides for appeals at two levels, first to the warden and then to the director of the Department of Corrections. (Court Doc. 29-11: MSP Policy 3.3.3, ¶ III(I)(a) and K)).

    The prison's facility health administrator is responsible for

processing all medical grievances. An inmate dissatisfied with the response to a medical grievance may appeal the decision to the director of the Department of Corrections. The inmate must file the appropriate paperwork within three working days of the decision by the facility health administrator. (Court Doc. 29-11: MSP Policy 3.3.3, ¶ III(J)). Here it is undisputed that Mr. Frank could have filed grievances during the nearly 12 months he worked on the ranch, but did not do so.

Defendants argue Mr. Frank failed to adhere to the procedural rules of the MSP grievance procedure because he failed to file a grievance alerting authorities to this alleged danger in a timely fashion so Defendants could investigate, and if appropriate correct, the problem. Mr. Frank did not file any contemporaneous grievances whatsoever. He waited instead until after he took advantage of the job to escape and then was apprehended from his prison escape and crime spree before filing a grievance.

First, Mr. Frank failed to exhaust his administrative remedies relating to breathing raw gas fumes and spraying crop fields with "raw human waste." Mr. Frank did not properly exhaust his administrative

remedies regarding these claims prior to filing this lawsuit, and thus dismissal is required.  42 U.S.C. § 1997e(a); *McKinney v. Carey*, 311 F.3d 1198, 1198 (9th Cir. 2002).

Next, it is undisputed that Mr. Frank first submitted two grievances on June 21 and 22, 2007 regarding the alleged lack of protective gear and the alleged exposure to carbon monoxide in the (escape) spray truck from June 2006 through June 8, 2007.  These grievances were addressed on the merits and appealed through all levels to the Director of the Department of Corrections.

In *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006), the United States Supreme Court held that exhaustion must be "proper," meaning a grievant must correctly use all steps the agency sets forth.  *Woodford*, 548 U.S. at 90.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

Mr. Frank did not properly exhaust his available administrative remedies regarding his remaining claims.  Under the grievance

procedure in place at all times relevant to this case, Mr. Frank had five days from the date of an event to file an informal resolution, which is the first step in the grievance process. (Court Doc. 29-11: MSP Policy 3.3.3 Section III(E)). Mr. Frank alleges he was exposed to the conditions he complains of throughout his work, up to his last day of work, June 8, 2007. He could have filed an informal grievance through June 13, 2007. He did not. Instead, he remained silent (quite likely in aid of his planned escape). He did not properly comply with MSP's "deadlines and other critical procedural rules," or even attempt to do so. He demonstrated no intention to use the process to remedy dangerous conditions. Hie belated grievances are submitted in bad faith and with his own hands unclean. His claims should be dismissed for failure to exhaust the available administrative remedies. *Woodford*, 548 U.S. at 90-91. *But see Jones v. Stewart*, 457 F.Supp.2d 1131, 1134 (D.Nev.2006); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004) (abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Bradley v. Williams*, 2009 WL 198014, at *2 (D.Or. 2009); *McCarter v. California Dept. of Corrections and Rehabilitation*, 2009 WL 2049359

(C.D.Cal. 2009); *Ellis v. Vadlamudi,* 568 F.Supp.2d 778, 785-786 (E.D.Mich.2008); *Griswold v. Morgan,* 317 F.Supp.2d 226, 230 (W.D.N.Y.2004); *Murrell v. Casterline,* 2009 WL 2356486 (W.D.La. 2009).

Defendants should not be held to have waived their timeliness objection, because of Mr. Frank's own bad faith and unclean hands.  Mr. Frank's filing makes a mockery of the purpose of filing grievances.

## IV.  CONCLUSION

Mr. Frank did not properly exhaust the available administrative remedies for any of his claims.

Accordingly, the Court issues the following:

### RECOMMENDATIONS

Defendants' Motion to Dismiss (Court Doc. 24) should be **GRANTED**.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within

fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This Order is not appealable and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 13th day of July, 2010.

       /s/ Keith Strong  
       Keith Strong  
       United States Magistrate Judge